**ELYRIA (city) v
OHIO PUBLIC SERVICE CO**

Ohio Appeals, 9th Dist, Lorain Co

No 704.  Decided May 18, 1934

Howard R. Butler, City Solicitor, Elyria, for plaintiff.

Stevens & Stevens, Elyria, for defendant.

**OPINION**

By STEVENS, J.

At the outset, it may be well to define the terms "demand" and "connected load," as those definitions appear from the evidence.

" 'Demand' means that amount of energy that your system is demanding at a specific time."

"The term 'connected load' means the total of appliances in their aggregate on the system, connected, ready for use."

It will be observed that §1 of ordinance No. 2947 fixes the maximum rates to be charged commercial users, and provides for what is designated as a "two-part" rate; consisting of first a "capacity charge" of 20c per 100 watts of demand, and second a "consumption charge" for current actually used.

Section 2 of said ordinance provides for the manner of determining "demand," as follows: 1. By counting the greatest number of lamps and appliances which may be in use at any one time, or, 2. By measurement from a demand meter.

We are called upon first to determine the meaning of the words "which may be in use at any one time," used in said ordinance in part 1 of §2; second, to decide what the ordinance means with reference to the time over which "demand" shall be determined, to the end that the "capacity charge" may be properly computed; and third, to determine whether the plaintiff is barred from making the complaint here presented, by reason of laches.

It is contended by counsel for defendant that the words "which may be in use at any one time," mean the same as though the ordinance provided "which are capable of being used at any one time." If that were true, then, at the option of the defendant, "demand" could always be computed upon the basis of "connected load," and inasmuch as "connected load" constitutes the maximum to which demand could possibly go in any given installation, we cannot conclude that such a construction would be a tenable one. Had the parties to said contract intended the "capacity charge" to be based upon a "demand" equal to the "connected load" of each installation, undoubtedly they would have so provided in the contract, for the terms "demand" and "connected load" are so used elsewhere in said ordinance as to indicate a comprehension, upon the part of the contracting parties, of the technical meanings of each of said terms. This becomes all the more apparent when it is understood that the defendant, during approximately one-half of the life of the instant rate ordinance, has never construed the contract to mean that "demand" and "connected load" were equivalents, and has never made its "capacity charge" upon the basis of "connected load."

The Supreme Court of this state, in the case of **Cleveland Ry. Co. v City of Cleveland, 97 Oh St 122,** has laid down the rule of construction to be adopted in cases of the character here presented, as follows:

"1. The Constitution of Ohio provides that all private property shall be 'subser-

vient to the public welfare.' By virtue thereof, when a private person or corporation enters into a contract with the public and such contract is of doubtful or uncertain meaning as to any of its provisions, that construction should be adopted that is most favorable and advantageous to the public interest and general welfare."

See also 19 O. Jur., "Franchises," where the first part of §9 reads as follows:

"While it is the accepted doctrine that all grants are to be construed according to the intention of the parties, yet there are certain general rules of construction by the light of which such contracts are to be examined. These rules are well settled by numerous authorities. In this day, private interests and private rights must yield to public interests and public rights, and, where there is an ambiguity or uncertainty as to which of two constructions should prevail in a franchise contract, it is quite clear that that construction should be adopted by the courts that would be most favorable to the public interest and welfare, so the rule is well established that grants of this character should be strictly construed in favor of the public and against the grantee."

"The reasoning upon which this rule is based applies as well to rate ordinances and schedules as to franchises * * *."
**Defiance v Toledo Edison Co., 15 Abs 369, at p. 372.**

The construction sought by defendant would militate strongly in favor of the utility and against the interests of the public, and, under the rule of the Supreme Court set forth, supra, such a construction may not be adopted by this court.

Guided by the rules of construction which it is our duty to apply in this case, we are clearly of the opinion, from the ordinance as a whole, considered in connection with the situation and conduct of the contracting parties as disclosed by the evidence, that it was not the intention of the parties to provide, as a part of the rate charge, for a capacity charge based upon the connected load **as such;** that while the demand in a particular instance, ascertained in either of the ways specified, might equal the connected load, still the connected load, as such, was not only not an element or factor in the rate schedule, but was purposely omitted therefrom.

Application of the rule announced above, leads us to conclude that the words "which may be in use at any one time" mean "which are actually in use at any one time."

That construction would preclude the computation of a capacity charge upon a demand equivalent to connected load and would require a computation, under Article 1 of §2 of said ordinance, upon the basis of counting the greatest number of lamps and appliances actually in use at the time of making the examination for the purpose of determining the demand.

We come now to a consideration of the second question presented—i.e., whether demand is to be ascertained over each thirty-day period, or may be charged for upon the basis of the highest demand, exclusive of the demand of the Christmas holidays, during the twelve months preceding rendition of the monthly bill.

Section 3 of said ordinance provides "That all electrical current furnished to commercial establishments under said franchise and under this rate ordinance, during the five-year period commencing September 1, 1931, be supplied to customers on the basis of a thirty-day period * * *; that if possible all meters be read once every thirty days; that **monthly** bills for electrical current supplied to commercial establishments, **and computed at the above-mentioned rates,** be delivered to the customers; that the customers have ten days in which to pay such bills * * *."

It will be apparent from a reading of the ordinance that monthly settlements are contemplated between the company and consumers.

At no place in said ordinance is any express authority given the company to compute capacity charge on the basis of the highest demand during the preceding twelve months, exclusive of the demand of the Christmas season; indeed, we can find no language in the ordinance indicating an intention upon the part of the contracting parties to predicate the capacity charge for any particular month upon the demand for any month other than the one for which the charge is made; nor can we find language from which such intention may be reasonably inferred.

The ordinance being silent upon that point, the rule laid down by the Supreme Court in the case of **East Ohio Gas Co. v City of Akron, 81 Oh St 33,** must be applied:

"3. While much regard will be given to the clear intention of the parties, yet where the contract is entirely silent as to a par-

ticular matter, the courts will exercise great caution not to include in the contract, by construction, something which was intended to be excluded."

This rule, considered in conjunction with the rule laid down in the Cleveland Ry. Co. case, supra, together with a consideration of said ordinance 2947 in its entirety, requires a conclusion, in the opinion of this court, that the "demand" to be used in the computation of the capacity charge of defendant must be determined each 30 days, and the monthly capacity charge based upon the demand so determined.

The conclusion herein reached, however, is not intended to have, and shall not have, any effect upon the minimum capacity charge specified in said ordinance.

We have considered the question of laches upon the part of the plaintiff, and find no merit in that contention.

A decree may be drawn awarding to plaintiff the relief specified in this opinion.

If either party desires a review of this decision by the Supreme Court, the order may be drawn so that said injunction shall become operative from and after the 31st day of the present month of May, which will afford such party an opportunity to apply to the Supreme Court for a stay or any relief obtainable from such court.

Exceptions to both parties hereto.

WASHBURN, PJ, and FUNK, J, concur in judgment.